ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JOSIAH BOURNES (CABN 272316)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7181
    FAX: (415) 436-7234
    Josiah.bournes@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANTHONY FARDELLA, <br><br> Defendant. | CASE NO. 23-CR-00044-VC <br><br> UNITED STATES' SENTENCING MEMORANDUM <br><br> Hearing Date: September 4, 2024 <br> Time: 1:00 p.m. |

The government respectfully request that this Court sentence the defendant to a prison sentence of 5 years to be followed by 3 years of supervision.

## I.   INTRODUCTION: OFFENSE CONDUCT

This case involves the robbery of two different banks on November 19, 2022: Bank of America, and, East West Bank. PSR ¶ 7, 11.  First, defendant Fardella drove his Mercury SUV with co-defendant Ashley Crowder (and a third co-conspirator), to the Bank of America located at 1640 Van Ness Avenue at approximately 2:32 p.m. PSR ¶ 7. Crowder and the third co-conspirator then entered Bank of America. They both passed demand notes to tellers in Bank of America. PSR ¶ 8. The letters made clear that it was "not a joke," demanded all their money, and indicated that no one would get hurt if the tellers complied. *Id*. The tellers complied and

approximately $1,100 was taken during the first bank robbery. PSR ¶ 10. Fardella waited outside and drove himself, Crowder, and the third co-conspirator away from Bank of America at approximately 2:47 p.m. PSR ¶ 10.

The second bank robbery occurred later that afternoon when Fardella, Crowder, and the third co-conspirator entered East West Bank located at 498 Clement Street. PSR ¶ 11. The co-conspirator passed a teller a demand note indicating again that the teller should give her all the money, that it wasn't a joke, and, that no one would get hurt if the teller complied. *Id*. Crowder and Fardella spoke with other bank tellers about cashing checks while the co-conspirator robbed the bank. *Id*. According to the police report (P.R.),[1] Fardella and Crowder had entered East West Bank earlier that day and asked the tellers about converting euros to U.S. currency. P.R. at 5. The tellers advised the defendants that they would need to go to go to Bank of America for the conversion and the defendants responded that they had just left Bank of America. *Id*. The prior conversation between Fardella, Crowder, and the tellers appears to have served the purposes of either casing the bank or distracting the tellers.  This appeared to work because when Fardella, Crowder, and the co-conspirator entered East West Bank a little later in the day, the tellers that were speaking directly to Fardella and Crowder did not realize they were involved in the bank robbery. *Id*. at 6. From review of the reports, it doesn't appear that Fardella or Crowder conducted any actual transaction during the robbery. Once the robbery was completed, the co-conspirator left the bank with $1,500 in stolen funds and Fardella and Crowder followed closely behind her one at a time. PSR ¶ 12.

SFPD circulated a BOLO (be on the lookout) email regarding the robbery with a photograph of Fardella's getaway vehicle, a blue Mercury SUV. PSR ¶ 13. SFPD Officers located the vehicle later that day. Fardella was driving and Crowder was also in the car. PSR ¶ 14. Fardella ran through multiple red lights at a high rate of speed in an effort to evade Officers. *Id*.  Officers eventually took both Fardella and Crowder into custody after deploying spike strips to slow down Fardella fleeing in his car. *Id*.

---

[1] SFPD incident report # 220797287.

UNITED STATES' SENTENCING MEMO 2
23-CR-00044-VC

## II.   PROCEDURAL HISTORY

On February 8, 2023, the government filed a two-count indictment against Anthony Fardella and Ashley Crowder. Fardella was charged in count 2 only with Conspiracy to Commit Bank Robbery. PSR 4 ¶ 1. On June 4, 2024, defendant Fardella pled guilty to Count Two of the Indictment. *Id*. at ¶ 2. The defendant pled open so there was no agreement between the parties. *Id*. at ¶ 3. Judgment and Sentencing are currently scheduled for September 4, 2024, at 1:00 p.m. *Id*. at ¶ 2.

## III.   SENTENCING GUIDELINES CALCULATION

The government agrees with probation's sentencing guidelines calculations. First, the government agrees that the base offense level is 20. PSR ¶ 20. Second, the government agrees that a two- point increase is appropriate given that $2,600 was taken from two different financial institutions using the same demand note method and indicating that the offense involved "more than minimal planning" pursuant to USSG § 2B2.1(b)(1). PSR ¶ 23. Third, the government agrees that the two-point reduction is appropriate given that defendant was a minor participant (PSR ¶ 25), and, that a two-point increase is appropriate as a result of defendant's efforts to obstruct justice by reckless attempting to evade the police upon contact. PSR ¶ 26. Finally, the government agrees that the defendant is entitled to a three-point reduction for his acceptance of responsibility. PSR ¶ 29-30. Thus, the government agrees with the total offense level as determined by probation to be 19. PSR ¶ 31.

The government also agrees with probation and has no objection regarding probation's recommendation that the Court make a finding that the defendant total criminal history score is 22, with a criminal history category of IV. PSR ¶ 49. Finally, the government agrees that guideline term of imprisonment is 60 months (given that the guideline range of 63 to 78 months exceeds the 60-monthg maximum sentence). PSR ¶ 85.

## IV. SENTENCING RECOMMENDATION

### a. Legal Standard

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Guidelines. *Id.* After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in § 3553(a). *Id.* at 991-93. As applicable here, these factors include:

1. The nature and circumstances of the offense and the history and characteristics of the Defendant;
2. the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
3. the need for the sentence imposed to afford adequate deterrence to criminal conduct;
4. the need for the sentence imposed to protect the public from further crimes of the defendant; and
5. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

### b. Recommended Sentence and Section 3553(a) Factors

For the reasons set forth below, the government recommends that the Court sentence the defendant to a period of 5 years, to be followed by three years of supervised release. A sentence with these terms would be sufficient, but not greater than necessary, to meet the goals set forth in 18 U.S.C. § 3553.

The nature and circumstances of the charged offense and other relevant conduct, as well as the defendant's troubling criminal history, counsel in favor of a significant sentence. Such a sentence is also necessary to promote respect for the law, afford adequate deterrence, and protect the public from further crimes of the defendant.

The government's sentencing recommendation is made for the following reasons.

1    First, the nature and circumstances of the offense charged here are not insignificant. Fortunately, no one was injured during either bank robbery that underlines the offense that was committed, and, the government recognizes that. In addition, the defendant's role in the bank robbery at Bank of America appeared to be as the driver to and from the location. His role at East West Bank appeared to be casing the bank, and, serving as a distraction to other tellers while his co-conspirator passed the demand note. The fact that all 3 individuals were involved in both incidents underscores that they were working in concert. Although the government agrees that the defendant was a minor participant, his role was nonetheless integral as he provided the transportation to Bank of America and support during the East West Bank robbery. The danger inherent in any conspiracy to commit bank robbery requires a significant sentence. Moreover, it is important to consider the victim tellers had to endure the fear that results after receiving demand notes of the nature received in this case. Defendant's guilty plea also indicates he was a knowing participant in the conspiracy. Thus, defendant's knowing participation in the conspiracy warrants the five years requested by probation and the government concurs with that request.

   Second, the defendant's history and characteristics also weigh in favor of a prison sentence. The defendant's criminal history is not insignificant. According to the PSR, the defendant has multiple prior felony convictions that count under the guidelines, and, resulted in prison sentences. PSR ¶¶ 37-38, 43-44, 45-46. The government would also note that the defendant was convicted in 2009 for felony evading the police. PSR ¶ 38. This particular conviction is troubling to the government because in the current case, the defendant failed to yield, attempted to evade the police, and broke numerous traffic laws in that process. PSR ¶ 14. Thus, it appears to the government that even after serving 16 months in prison in 2009 for the evading conviction, and, being placed on parole (PSR ¶ 38), the defendant did not learn the lesson that he should neither be driving recklessly nor should he be attempting to evade the police upon contact. The other particularly troubling part of defendant's history is that his last three convictions resulting from offenses in 2018, 2019, and 2022 all appear to be convictions for illegally possession a firearm in some way (possession of a controlled substance while

armed, prohibited person in possession of a firearm, and, felon in possession of a firearm). PSR ¶ ¶ 43-45. When you include his current conviction, defendant has sustained four felony convictions in the last six years (and five from the last seven since he also has a conviction from a 2017 arrest). PSR ¶ ¶ 43-46. Furthermore, these most recent convictions appear to demonstrate that defendant continues to knowingly violate the law, and, that his prior recent prison sentences (3 years for the 2018 offense, 2 years for the 2019 offense 2020, and 16 months for the 2022 offense) (PSR ¶ ¶ 43-45), have been insufficient to deter defendant from continuing to commit crimes. Thus, it appears to the government that a more significant prison sentence is appropriate to accomplish the necessary deterrence.

The government does note that the defendant appears to have had a significantly difficult childhood which included being abandoned by his mother, being exposed to both alcohol and drugs at a young age, and, being sexually abused as reported by defendant. PSR ¶ 65-68, 77. In this case, as in every case, it is difficult to gauge the extent to which these traumatic events may have played a role in the defendant's overall life trajectory, including his subsequent criminal history and the current criminal offense. As a result, the government would simply note that these reported experiences appear to provide some context/mitigation, would be difficult for anyone to endure, and, would likely have some future effect on anyone who endured them.

Third, the need to protect the public from further crimes from the defendant appears to weigh in favor of the 5 years recommended. According to the PSR, eight separate prior criminal convictions underlie the defendant's subtotal criminal history score of 21. PSR Pages 8-12, ¶ 47. The arrest year for the first conviction is 2008 and for the last is 2022. PSR ¶ ¶ 37, 46. Thus, defendant appears to have engaged in a pattern of criminal conduct spanning over the last decade. As a result, the need to protect the public from further crimes of the defendant in this case appears to be particularly high as his crimes have continued throughout the years.

For all the reasons set forth above, the need to promote respect for the law also weighs against the defendant and in favor of a significant sentence. The offense date in the current case was November 19, 2022, while the offense date for defendant's most recent prior conviction was May 21, 2022. PSR ¶ 46. Thus, in 2022 alone, it appears the defendant committed multiple

crimes. Taking all of this into account, the need to promote respect for the law is a strong factor in this case.

For the reasons set forth above, the Court should sentence the Defendant to a 5-year term of imprisonment, to be followed by a three-year term of supervised release subject to the standard terms and special conditions proposed by Probation.

DATED:  August 26, 2024                    Respectfully submitted,

                                              ISMAIL J. RAMSEY
                                              United States Attorney

                                              */s/ Josiah Bournes*_____
                                              JOSIAH BOURNES
                                              Assistant United States Attorney